# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

| | |
|---|---|
| **DERRICK GRIFFIN,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | Civil Action No. 5:10-0740 |
| ) | |
| **DAVID BERKEBILE, Warden,** ) | |
| ) | |
| **Respondent.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

On May 14, 2010, Petitioner, acting *pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody.[1] (Document No. 1.) Petitioner argues that he is being improperly denied a sentence reduction pursuant to 18 U.S.C. § 3621 because his sentence was enhanced due his possession of a firearm. (Id., pp. 2 - 3.) First, Petitioner argues that his two-level enhancement pursuant to Section 2D1.1 of the Federal Sentencing Guidelines was a sentencing factor found by the district judge, which does not qualify as the "conviction" for purposes of Section 550.55(b). (Id., pp. 9 - 11.) Second, Petitioner claims "the Bureau's application of its regulation governing early release eligibility under § 3621(e), codified as 28 C.F.R. § 550.55, violate's Petitioner's constitutional right to equal protection." (Id., pp. 11 - 14.) Petitioner alleges that the BOP has violated his right to Equal Protection because inmates who are incarcerated, or have completed the RDAP program, in the Ninth Circuit are treated differently. (Id., pp. 11 - 12.) Citing Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008), Petitioner argues that the categorical exclusion

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

regulation promulgated by the BOP is invalid under the Administrative Procedures Act. (Id., p. 5.) Petitioner explains that the BOP finds inmates eligible for early release pursuant to Arrington if the inmate is currently housed in an institution located in the Ninth Circuit, or the inmate completed a RDAP at an institution located in the Ninth Circuit. (Id., pp. 12 - 13.) Finally, Petitioner complains that "Section 550.55 of the Code of Federal Regulations was promulgated in violation of the Administrative Procedure Act and, therefore, must be invalidated." (Id., p. 14.) Petitioner states that "[a] review of the administrative record concerning 28 C.F.R. § 550.55 clearly demonstrates the Bureau has again failed to offer a rational explanation for its categorical exclusion of prisoners with weapons enhancements from early release under 18 U.S.C. § 3621(e)." (Id., p. 15.)

On December 23, 2010, Petitioner filed a "Motion for Permission to File Amended Pleading" (Document No. 5.) and his "Amended Petition for Habeas Corpus" (Document No. 6.). In support of his Motion, Petitioner states as follows: (1) "Subsequent to the filing of said Petition, the Petitioner completed the administrative remedy process with the Bureau of Prisons and completed the Residential Drug Abuse Program;" (2) "Both of these completed steps have a direct bearing on the instant Petition, either related to jurisdiction or the manner in which this Court will review the issues raised for collateral review;" and (3) "Respondent's name on face page to be changed from United States of America to David Berkebile, Warden, as noted on page 7, paragraph 1 of 2241, stating responsible party."[2] (Document No. 5, pp. 1 - 2.)

In his Amended Petition, Petitioner "incorporates the original Petition for Habeas Corpus" and notifies the Court that "Petitioner has successfully completed the Residential Drug Abuse

---

[2] By separate Order entered this day, the undersigned has granted Petitioner's "Motion for Permission to File Amended Pleading"

Program and has subsequently been formally denied any reduction in his sentence." (Document No. 6, pp. 1 - 2.) In support, Petitioner attaches the following Exhibits: (1) A copy of Petitioner's Request for Administrative Remedy dated May 12, 2010 (Id., p. 4.); (2) A copy of Warden Berkebile's Response dated June 17, 2010, denying Petitioner's Request for Administrative Remedy (Id., p. 5.); (3) A copy of the Regional Director's Response dated July 21, 2010, denying Petitioner's Regional Administrative Remedy Appeal (Id., p. 6.); (4) A copy of Petitioner's Central Office Administrative Remedy Appeal dated August 19, 2010 (Id., p. 7.); (5) A copy of Administrator Harrell Watts' Response dated October 1, 2010, denying Petitioner's appeal (Id., p. 8.); and (6) A copy of Petitioner's Certificate of Completion exhibiting that Petitioner completed the 500 Hour Residential Drug Abuse Program on October 1, 2010 (Id., p. 9.).

## DISCUSSION

**1.     Petitioner's Provisional Eligibility for Early Release Under Section 3621(e).**

Petitioner asserts that the BOP erred by considering his sentence enhancement for possession of a dangerous weapon when determining whether he qualified for early release under the RDAP. (Document No. 1.)

Title 18 U.S.C. § 3621(b), authorizes the BOP to implement drug abuse treatment programs for its prisoners: "The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To effectuate this mandate, the BOP is required to ensure that all "eligible prisoners" "with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment . . . [and the BOP shall] provide residential substance abuse treatment." 18 U.S.C. § 3621(e)(1). As an incentive for successful completion of the RDAP, prisoners with non-violent

3

offenses may receive a reduced sentence up to one year upon completion of the program as follows:

> **(2) Incentive for prisoner's successful completion of treatment program. - -**
>
> **(A) Generally.** – Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such condition on determining that substance abuse has recurred.
>
> **(B) Period of custody.** - - The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B). Section 3621, however, does not set forth the criteria for eligibility for early release. Rather, the statute vests the BOP with discretionary authority to determine when an inmate's sentence may be reduced. Thus, the BOP in its discretionary authority established criteria for determining eligibility for early release. 28 C.F.R. § 550.55[3] provides in part that inmates whose

---

[3] Title 28, C.F.R. § 550.55 sets forth in part, the following eligibility requirements:

(a) Eligibility. Inmates may be eligible for early release by a period not to exceed twelve months if they:
    (1) Were sentenced to a term of imprisonment under either:
        (i) 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense; or
        (ii) D.C. Code § 24-403.01 for a nonviolent offense, meaning an offense other than those included within the definition of "crime of violence" in D.C. Code § 23-1331(4); and
    (2) Successfully complete a RDAP, as described in § 550.53, during their current commitment.

(b) Inmates not eligible for early release. As an exercise of the Director's discretion, the following categories of inmates are not eligible for early release:
    \* \* \*
    (5) Inmates who have a current felony conviction for:
    \* \* \*
    (ii) An offense that involved the carrying, possession, or use of a firearm or

current felony offense is a felony that "involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives" or "by its nature or conduct, presents a serious potential risk of physical force against the person or property of another" are ineligible for early release consideration. 28 C.F.R. § 550.55(b)(5)(ii) and (iii). The BOP explains this eligibility criteria in Program Statement [P.S.] 5331.02 stating that an inmate "shall be precluded from receiving certain Bureau program benefits" when the inmate's current offense is a felony that "[i]nvolved the carrying, possession, or use of a firearm or other dangerous weapon or explosive." P.S. 5162.05 § 4 identifies offenses that at the director's discretion shall preclude an inmate's receiving certain Bureau Program benefits. Section 4(b) of P.S. 5162.05 provides that a person convicted of a drug offense under 21 U.S.C. § 841 and 846, who has received a two-level sentencing enhancement for possession of a firearm or dangerous weapon has been convicted of an "offense that will preclude the inmate from receiving certain Bureau program benefits." Accordingly, P.S. 51620.05 precludes early release consideration pursuant to 18 U.S.C. § 3621(e)(2)(B), for any inmate whose drug conviction under 28 U.S.C. § 841 or 846 was enhanced based upon possession of a firearm because

---

> other dangerous weapon or explosives (including any explosive material or explosive device);
> (iii) An offense that, by its nature or conduct, presents a serious potential risk of physical force against the person or property of another; or
> * * *
> (c) Early release time-frame.
> > (1) Inmates so approved may receive early release up to twelve months prior to the expiration of the term of incarceration, except as provided in paragraphs (c)(2) and (3) of this section;
> > (2) Under the Director's discretion allowed by 18 U.S.C. 3621(e), we may limit the time-frame of early release based upon the length of sentence imposed by the Court;
> > (3) If inmates cannot fulfill their community-based treatment obligations by the presumptive release date, we may adjust provisional release date by the least amount of time necessary to allow inmates to fulfill their treatment obligations.

"possession of a dangerous weapon during the commission of a drug offense poses a substantial risk that force may be used against persons or property." P.S. 5162.05 § 4.

Although Petitioner contends that the BOP did not have authority to classify his drug conviction as a "crime of violence" rendering him ineligible for early release consideration pursuant to 18 U.S.C. § 3621(e), the express language of the statute clearly vests the BOP with broad discretion to make such a determination. However, because Congress failed to define " a nonviolent offense" for purposes of 18 U.S.C. § 3621(e)(2)(B), the Court must determine whether 28 C.F.R. § 550.55, as applied through Program Statement 5162.05 and 5331.02, represent a reasonable interpretation of the statute.

In reviewing an agency's interpretation of a statute, it is well settled that the Court must first determine "whether Congress has spoken directly to the precise question at issue." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If Congress' intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. If Congress' intent is not clear however, then the statute is ambiguous and the question for the Court becomes "whether the agency's answer is based on a permissible construction of the statute." Id. at 842, 104 S.Ct. at 2782. The Court must accord "substantial deference" to the agency's reasonable interpretation of a statute Congress has charged it with administering, unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute." Id. at 844-45, 104 S.Ct. at 2782-83. When the agency's regulatory action is not subject to the Administrative Procedures Act [APA], 5 U.S.C. § 553, however, deference due under Chevron is inapplicable and the agency's interpretation is only "entitled to some deference. . . [so long as] it is a 'permissible construction of the statute.'"

See Reno v. Koray, 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995); see also, Fuller v. Moore, 1997 WL 791681 (4th Cir. Dec. 29, 1997)(BOP program statements are not subject to the rigors of the APA and therefore, are only entitled "some deference."). Although the Supreme Court did not explain the difference between "substantial deference" and "some deference," the Eleventh Circuit explained the meaning of "some deference" as follows:

> We do not think it is obvious, however, that "some deference" means there are occasions in which we should uphold the interpretation contained in a BOP program statement, even though it is different from the one we would reach if we were deciding the matter *de novo*. If that were not true, "some deference" would be the same as "no deference," and that would render the Supreme Court's word in Koray meaningless.

Cook v. Wiley, 208 F.3d 1314, 1319-20 (11th Cir. 2000). In Christensen v. Harris County, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), in declining to defer to an agency's interpretation contained in an opinion letter, the Supreme Court stated:

> Interpretations such as those in opinion letters -- like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law -- do not warrant Chevron-style deference. Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade.'

Christensen, 529 U.S. at 587, 120 S.Ct. at 1662 (citations omitted); see also United States v. Mead Corp., 533 U.S. 218, 235, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)(new policy is entitled only "some deference" or "respect proportional to 'its power to persuade.'"). The BOP's interpretation as expressed in 28 C.F.R. § 550.55 is subject to the notice and comment provisions of the APA and therefore, the undersigned finds that the interpretation is entitled substantial deference. Program Statements 5162.05 and 5331.02, however, are not subject to the APA and therefore, are entitled to respect to the extent that it has power to persuade. Under this framework, the undersigned finds that

the BOP's interpretations of Section 3621(e) and P.S. 5162.05 and 5331.02 are "permissible constructions of the statute" and are in accord with its plain meaning and legislative intent.

Section 3621(e) states that the sentence of an inmate "convicted of a non-violent offense . . . *may* be reduced by the Bureau of Prisons." 18 U.S.C. § 3621(e)(2)(B)(emphasis added). The legislative history indicates that part of the reason in passing Section 3621, was ultimately to reduce the recidivism rate of substance abusers by providing an incentive for inmates to obtain drug treatment. See Residential Substance Abuse Treatment in Federal Prisons, P.L. 103-322, Violent Crime Control and Law Enforcement Act of 1994, H.R. Rep. No. 103-320, at 2 (1993). The "non-violent offense" language, however, was inserted to ensure that inmates likely to commit violent crimes do not receive early release. Id. Other than alluding to the BOP's discretionary authority in awarding early release, the legislative history does not provide any further insight into whether the BOP could categorically exclude certain inmates from early release. Accordingly, the undersigned must determine under the second step of the Chevron analysis whether the BOP's interpretation of Section 3621(e) is a reasonable and permissible construction of the statute.

The BOP's interpretation of Section 3621(e) and establishment of eligibility criteria is entitled substantial deference. The undersigned finds that in view of the statute's complete silence on eligibility, the BOP's interpretation is not inconsistent with the language of the statute as a whole. The statute provides that the BOP may reduce the sentence of an inmate convicted of a nonviolent offense. The BOP has construed this language to mean that inmates who receive a sentence enhancement for possession of a firearm in connection with the commission of a drug offense should not be rewarded with a one year early release. See 28 C.F.R. § 550.55, P.S. 5162.05, P.S. 5331.02. In promulgating Section 550.55, the BOP explained in pertinent part as follows: "The Bureau

8

recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentence." Drug Abuse Treatment Program, 74 Fed.Reg. 1892, 1895 (Jan. 14, 2009). In Lopez v. Davis, 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), the United States Supreme Court determined that the BOP had not abused its discretion in promulgating Section 550.58 (1997 regulation) because the BOP "reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggest his readiness to resort to life-endangering violence." Lopez v. Davis, 531 U.S. 230, 244, 121 S.Ct. 714, 724, 148 L.Ed.2d 635 (2001)("[T]he Bureau may categorically exclude prisoners based on their preconviction conduct . . .."). The undersigned notes that effective March 16, 2009, 28 C.F.R. § 550.58 was modified slightly and redesigned as 28 C.F.R. § 550.55. Section 550.55 is essentially identical to Section 550.58, but contains a detailed rationale as to why inmates who have been convicted of carrying, possessing, or using a firearm in connection with a drug trafficking offense are ineligible for consideration for early release. See Hicks v. Federal Bureau of Prisons, 603 F.Supp.2d 835 (D.S.C. 2009)(When applying Section 550.55, Petitioner's APA challenge fails because the new regulation merely clarifies the BOP's position), aff'd, 358 Fed.Appx. 393 (4th Cir. 2009), cert. denied, ___ U.S. ___, 130 S.Ct. 3442, 177 L.Ed.2d 347 (2010); also see Holland v. Federal Bureau of Prisons, 2009 WL 2872835 (D.S.C. Sept. 2, 2009)(slip copy)(finding that petitioner's petition should be dismissed because (1) his claim "based on *Arrington's* conclusion that § 550.58 violated the APA fails because the regulation satisfies the Fourth Circuit's requirement that the agency's rationale be 'reasonably discernable,'" and (2) "the newly adopted § 550.55 contains a detailed explanation"). The undersigned, therefore, finds that the BOP's interpretation of Section

3621(e) is reasonable and permissible. Accordingly, Petitioner's Section 2241 Application challenging the BOP's early release eligibility criteria must be dismissed.

**2.    No Liberty Interest in RDAP Placement or to Early Release:**

Petitioner appears to allege that his constitutional rights were violated because he was entitled to participate in RDAP and receive a reduced sentence for his participation in the program. (Document No. 1, pp. 12 - 14.) The Fifth Amendment protects against deprivations of life, liberty, or property by the federal government. See U.S. Const. amend. V. In order to prevail on a due process claim, a petitioner must show that the government has interfered with a protected liberty or property interest and that the procedures that led to the deprivation were constitutionally sufficient. Thus, petitioner must first demonstrate that he had a protected liberty interest. The fact of conviction and imprisonment implies the inmate's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, to establish a deprivation of a liberty interest with respect to RDAP, Petitioner must show either (1) that he has a legitimate entitlement to admission in RDAP or in early release or (2) that the denial thereof creates an atypical and significant hardship on him in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2299-2300.

Federal prisoners have no constitutional or inherent right to participate in rehabilitative programs while incarcerated. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). Likewise, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7, 99 S.Ct. at 2104; see also, Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."). Title 18, U.S.C. § 3621(e), however, vests the BOP with broad discretionary authority to reduce, by up to one year, the sentence of a federal prisoner convicted of a nonviolent offense, upon the successful completion of a substance abuse treatment program. 18 U.S.C. § 3621(e); see also Lopez, 531 U.S. at 232, 121 S.Ct. at 718. The language of

this statute which provides that a prisoner's sentence "may be reduced by the [BOP]," is clearly permissive; the statute does not *mandate* that the BOP reduce a prisoner's sentence upon completion of the substance abuse treatment program.[4] See Lopez, 531 U.S. at 240, 121 S.Ct. at 721(Affirming that the BOP "may exclude inmates whether categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." (Citations omitted.)); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir. 1996)(Finding that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program."). Thus, as to substance abuse treatment programs, the BOP has wide discretion in determining both whether an inmate enters such a program in the first instance and whether to grant or deny eligible inmates a sentence reduction under Section 3621(e). See Pelissero, 170 F.3d at 444. Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the rescission of their consideration for early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998).

Petitioner does not possess a constitutionally protected expectation interest in receiving a

---

[4] It should be noted here that the BOP is required to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). This obligatory command, however, does not extend to the granting of the incentive-based reduction of a prisoner's sentence for the successful completion of the substance abuse program.

sentence reduction. Such a subjective expectation does not arise to the level of a constitutional claim. See Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 635 (4th Cir. 1996)("[A] mere expectation of a benefit – even if that expectation is supported by consistent government practice – is not sufficient to create an interest protected by procedural due process. Instead, the statute at issue must create an entitlement to the benefit before procedural due process rights are triggered."). Neither Section 3621(e), the BOP's Program Statement (P.S. 5162.05), nor the Code of Federal Regulations (28 C.F.R. § 550.55), contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in early release.[5] See Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 1909-10, 104 L.Ed.2d 506 (1989)(Regulations must contain "explicitly mandatory language" to create a liberty interest.). Accordingly, Petitioner does not possess a statutorily protected expectation interest in early release.

**3.      No Violation of Equal Protection.**

Petitioner alleges that the BOP has violated his right to Equal Protection because inmates who are incarcerated, or have completed the RDAP program, in the Ninth Circuit are treated differently due to the BOP's recognition of the Arrington decision. (Document No. 1, pp. 11 - 13.) The relevant equal protection cases provide a basic three-step analysis to determine whether an inmate's right to equal protection has been violated. First, the inmate must produce evidence to show that he was treated differently than other similarly situated inmates. See Durso v. Rowe, 579 F.2d 1365, 1371 (7th Cir. 1978). Second, the inmate must show that he was intentionally singled out for

---

[5] Even upon completion of RDAP, the statute governing the substance abuse treatment program gives discretion to the BOP to determine whether a prisoner should be granted *any* reduction in sentence. *See* 18 U.S.C. § 3621(e)(2)(B).

harsher treatment. See Brandon v. District of Columbia Bd. of Parole (I), 734 F.2d 56, 60 (D.C. Cir. 1984); Stringer v. Rowe, 616 F.2d 993, 998 (7th Cir. 1980). Third, if the inmate was purposefully singled out, the analysis can take one of two paths. The first path is taken if the inmate can show that the prison's motivation in effecting its differential treatment implicates a suspect classification or a fundamental right. If this is established, the Court must strictly scrutinize the prison's actions. See O'Bar v. Pinion, 953 F.2d 74, 81-82. The prison must show that the classification is narrowly tailored to a compelling governmental interest. Id. If the prison's reason for the differential treatment does not implicate a suspect class or a fundamental right, the analysis takes the second path. See Brandon (I), 734 F.2d at 60, Brandon v. District of Columbia Bd. of Parole (II), 823 F.2d 644, 650 (D.C. Cir. 1987). On this path, the differential treatment is subject only to rational basis review. See O'Bar, 953 F.2d at 81-82. A rational basis review requires that the government's decision to treat similarly situated individuals differently bear some rational relationship to a legitimate State purpose. See id. at 81; Brandon (I), 734 F.2d at 60; Brandon (II), 823 F.2d at 650.

The undersigned finds that Petitioner fails to allege that a similar situated inmate at FCI Beckley received the benefit of the Arrington decision. Petitioner attempts to satisfy the first step by comparing the situation of an inmate incarcerated at FCI Beckley, to an inmate incarcerated in "Washington, Oregon, California, Arizona, Nevada, and Idaho." (Document No. 1, pp. 13 - 14.) This example, however, is inapposite as an FCI Beckley inmate is not "similarly situated" to inmates incarcerated Washington, Oregon, California, Arizona, Nevada, or Idaho. As explained above, the Arrington decision is not persuasive or binding upon this Court. Although the Arrington decision may be binding in Ninth Circuit, Petitioner is not incarcerated in Ninth Circuit and therefore is not similarly situated. Further, Petitioner cannot show that he was intentionally singled out for harsher

14

treatment. The BOP determined that the Arrington decision was inapplicable to Petitioner because he neither completed the RDAP program in the Ninth Circuit, nor is he incarcerated in the Ninth Circuit. Thus, the alleged harsh treatment is not an intentional act focused upon Petitioner, but is merely the result of his location. Finally, Petitioner does not allege that the decision not to apply Arrington was based on any suspect classification. The undersigned, therefore, finds that Petitioner has failed to state a claim for denial of equal protection of the law.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody (Document Nos. 1 and 6.) and **REMOVE** this matter from the Court's docket.

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Petitioner shall have seventeen days (14 days, filing of objections and 3 days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*.

Date: August 23, 2011.

R. Clarke VanDervort
United States Magistrate Judge